*170 Markman, J.
(dissenting). I respectfully dissent from this Court’s opinion reversing the Court of Appeals’ affirmance of the order terminating respondent-father’s parental rights to his two- and four-year-old sons. I simply cannot support the majority’s conclusion that the trial court clearly erred by terminating respondent’s parental rights. In addition, given that respondent received all the process to which he was entitled under the law, I find no “due process” violation in the fact that the majority is able to identify ways in which he could have been given still more process. The majority, quoting the children’s lawyer-guardian ad litem, asserts that respondent was “ ‘hamstrung from the beginning [in] trying to get things in order so that he [could] one day be a father to these children.’ ” However, the majority disregards two quite significant points. First, to the extent that respondent was “hamstrung,” this was of his own making — nobody but respondent can be blamed for the fact that he was in prison during the pendency of these proceedings. Second, there is no evidence that respondent did anything to provide for his children while they were living with their unfit mother, with foster parents, or with their paternal aunt and uncle.[1] Instead, respondent pleaded ‘no contest’ to the removal petition that alleged that *171 “Mr. Mason has failed to provide for the children physically, emotionally and financially.” Indeed, although respondent knew that the children’s mother was drinking again even before the court did, he still did nothing to try to protect his children from the precarious situation in which this placed his children. In addition, when he knew that his children were being removed from their mother, he did nothing to prevent them from being placed in foster care even though he had relatives who were willing and able to care for the children.
Despite respondent’s repeated failures in these regards, the majority reverses the judgment of the Court of Appeals, which affirmed the trial court’s termination of his parental rights, on the basis that the Department of Human Services (DHS) and the trial court did not do enough to help respondent become a better parent. I believe that the majority has it exactly backwards— respondent is the one who did not do enough to become a better parent. He did virtually nothing to demonstrate that he was willing or able to take responsibility for the care and custody of these children. It is potentially catastrophic for these children that their interest in a safe, secure, and stable home must again be placed in abeyance while respondent is afforded yet another opportunity to become a minimally acceptable parent.* [2]
Respondent has been incarcerated since 2006, and although he has now been released on parole, he was *172 still incarcerated both when the trial court terminated his parental rights and when the Court of Appeals affirmed that decision. Respondent has been convicted of criminal sexual conduct, failure to report as a registered sex offender, larceny, and drunk driving (twice). Respondent does not deny that the children’s mother, who was caring for the children before the DHS removed them, was an unfit parent. Indeed, respondent admits that “he knew that the mother had fallen off the wagon before the court knew” because “she had called him [and] told him she was drinking again”; yet he did absolutely nothing to protect his children from this situation. Respondent’s then two-year-old child was twice found by the police wandering around outside the home completely unsupervised. On one of these occasions, the mother was found inside asleep. She had inadequate housing, substance-abuse issues, problems with depression, no job, and an admitted inability to handle her children. She has been arrested for drunk driving twice and, as a result, has spent time in jail. She also refused to stop smoking around the children even though her smoking caused them to suffer severe asthma attacks, and both the DHS and the children’s doctor had counseled her not to smoke around them.
The mother has not appealed her own loss of parental ■rights, and the children are currently being cared for by their paternal aunt and uncle. At the time of termination, the children had already been living with foster parents and their paternal aunt and uncle for 18 months and all the trial court knew about respondent’s situation was that he would be eligible for parole in 5 months. The trial court obviously did not know that respondent would, in fact, be paroled in 5 months. There was also testimony from the DHS that it would take at least 6 months after parole was granted for respondent to demonstrate that he was capable of *173 caring for the children.[3] So that would have been at least another 11 months of the children living in limbo.[4]
The majority concludes that the trial court clearly erred by terminating respondent’s parental rights. “ ‘A finding is “clearly erroneous” [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.’ ” In re Rood, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by Corrigan, J.) (citation omitted). MCL 712A.19b(3)(h) permits termination when
[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child’s proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child’s age.
Those conditions were clearly satisfied here: the children had already been deprived of a normal home *174 for 18 months and, as a result of respondent’s incarceration, would have been deprived of a normal home for at least another 11 months. Therefore, respondent’s incarceration would have led to the children being deprived of a normal home for well over 2 years.[5] In addition, there was testimony that there was no reasonable expectation that respondent would be able to provide proper care within a reasonable time given the ages of the children.
Respondent had been in prison for more than two years (almost three years by the time he was released), and he had done absolutely nothing to provide for the children’s care. They had to be removed from their mother’s care because she was unable to properly care for them. They were then placed in foster care until their mother indicated that she would like a relative to care for the children. Some time thereafter, the children were placed with their paternal aunt and uncle. Although respondent’s relatives are currently caring for the children, respondent had absolutely nothing to do with this arrangement.[6] As he has been since his youngest was born, he was ‘missing in action’ in the lives of these children as they were shuttled from one home to another. In addition, there is no evidence that *175 respondent will be able to properly care for these children within a reasonable time. These children are very young, and respondent has been in prison since before the youngest child was even born. The foster care worker testified that it would take at least 6 months after being paroled for respondent to establish that he could properly care for the children; by the time the trial court terminated his parental rights, the children had already been living with foster parents and their paternal aunt and uncle for 18 months. These children need stability in their lives and they need it now; they cannot sit around indefinitely and wait to see if respondent, after interminable grants of supposed “due process” nowhere required in the law, can somehow become a responsible parent.[7] For these reasons, I simply cannot conclude that the trial court here clearly erred by terminating respondent’s parental rights.
*176 In Rood, the lead opinion concluded that the respondent-father’s due process rights were violated when his parental rights were terminated even though he had received no notice of the ongoing proceedings. In the instant case, respondent himself has not raised any due process issue, and this Court does not normally address issues that were not raised before the lower courts. Naccarato v Grob, 384 Mich 248, 255; 180 NW2d 788 (1970). However, because the majority gratuitously raises and addresses this issue, I will address it as well. Because respondent was incarcerated, he was not present at all the proceedings, but his counsel was always present on his behalf. Respondent’s counsel indicated that although he wrote to respondent and notified him of the proceedings and of the fact that respondent could participate by way of speakerphone, respondent did not initially respond. That is, contrary to the majority’s repeated contention that respondent was not informed of his right to participate in the hearings by telephone, respondent’s attorney did, in fact, inform respondent of this right. In addition, when asked whether he had had any contact with respondent, a foster care worker testified, “We send copies of the requirements up and try to make contact with the prison social worker that might be able to help them fulfill some of this and get into the services in the prison.” Finally, respondent did also, in fact, participate by way of speakerphone during at least two of the proceedings, and he did physically attend the termination hearing. Therefore, unlike the respondent in Rood, respondent was notified of the ongoing procedures and was represented by counsel at every one of these proceedings. Thus, contrary to the majority’s contention, this case is significantly distinguishable from Rood.
That is, unlike the respondent in Rood, respondent here was fully afforded due process. Yet the majority does not believe that the due process he received was enough. *177 One can always identify more process that a person can receive under these circumstances or in the criminal justice context. However, all that is required by the law is due process — the process that one is entitled to under the law — and that is exactly what respondent here received. Respondent received notice of the ongoing proceedings, he received an attorney who represented him at each of the proceedings, and he received an opportunity to participate in each of these proceedings. Given that respondent received all the process to which he was entitled under the law, I find no due process violation.[8]
MCR 2.004 provides, in pertinent part:
(A) This rule applies to
(2)... actions involving... the termination of parental rights, in which a party is incarcerated under the jurisdiction of the Department of Corrections.
*178 (B) The party seeking an order regarding a minor child shall
(3) file with the court the petition or motion seeking an order regarding the minor child, stating that a party is incarcerated and providing the party’s prison number and location; the caption of the petition or motion shall state that a telephonic hearing is required by this rule.
(C) When all the requirements of subrule (B) have been accomplished to the court’s satisfaction, the court shall issue an order requesting the department, or the facility where the party is located if it is not a department facility, to allow that party to participate with the court or its designee by way of a noncollect and unmonitored telephone call in a hearing or conference, including a friend of the court adjudicative hearing or meeting. The order shall include the date and time for the hearing, and the prisoner’s name and prison identification number, and shall be served by the court upon the parties and the warden or supervisor of the facility where the incarcerated party resides.
(E) The purpose of the telephone call described in this rule is to determine
(1) whether the incarcerated party has received adequate notice of the proceedings and has had an opportunity to respond and to participate,
(2) whether counsel is necessary in matters allowing for the appointment of counsel to assure that the incarcerated party’s access to the court is protected,
(3) whether the incarcerated party is capable of self-representation, if that is the party’s choice,
(4) how the incarcerated party can communicate with the court or the friend of the court during the pendency of *179 the action, and whether the party needs special assistance for such communication, including participation in additional telephone calls, and
(5) the scheduling and nature of future proceedings, to the extent practicable, and the manner in which the incarcerated party may participate.
(F) A court may not grant the relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings, as described in this rule. This provision shall not apply if the incarcerated party actually does participate in a telephone call, or if the court determines that immediate action is necessary on a temporary basis to protect the minor child.
Not only did respondent not raise the issue of MCR 2.004 below, he did not even raise it in this Court until after we mentioned the rule in our order directing that oral argument be heard on the application for leave to appeal. In re Mason, 485 Mich 993 (2009). There is no question that respondent was served with the petition to terminate his parental rights, and there is equally no question that respondent did participate at least twice by way of a telephone call. Further, MCR 2.004(E) expressly lays out “[t]he purpose of the telephone call,” and it appears that each relevant purpose listed was satisfied in this case — respondent received adequate notice of the proceedings, respondent was represented by counsel, and respondent was informed that he could participate by way of telephone calls in all future hearings.
MCR 2.004(F) further states, “A court may not grant relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings . . ..” In this case, respondent was afforded the opportunity to participate in the proceedings, as shown *180 by his own counsel’s statement that counsel had notified respondent that he could participate by way of speakerphone. As a result, the trial court was not precluded from terminating respondent’s parental rights. Moreover, MCR 2.004(F) provides that the provision prohibiting the court from granting relief if the incarcerated party was not offered the opportunity to participate “shall not apply if the incarcerated party actually does participate in a telephone call....” Because respondent did actually participate in at least two telephone calls and was physically present at the termination hearing, the trial court was not precluded from terminating his parental rights.
For these reasons, I do not believe that the trial court clearly erred by terminating respondent’s parental rights, that respondent’s due process rights were in any way violated, or that MCR 2.004 prohibited the trial court from terminating respondent’s parental rights. Thus, I dissent from this Court’s opinion reversing the Court of Appeals’ affirmance of the order terminating respondent’s parental rights.
Hathaway, J., concurred with Markman, J.

 In response to the majority’s assertion that respondent “supported” his family before he was imprisoned, I must note that respondent testified that, before he was imprisoned, he and his “family” lived in his mother’s house, his girlfriend’s grandmother’s house, and a house owned by his brother. In light of this testimony, it is not entirely clear who supported respondent and his “family” — respondent or respondent’s mother, his girlfriend’s grandmother, and his brother. Respondent also has a third child (who was not the subject of the termination proceedings at issue here), and there is no evidence in the record to suggest that respondent has done anything to provide for this child either, before or after his imprisonment. Although respondent did at one point write letters to one child while he was in prison, he admitted that he stopped doing even that. To say the least, I do not believe that the trial court clearly erred in its *171 conclusion that the fact that respondent allegedly “arranged for work and housing in anticipation of his parole” was too little, too late.

 The majority contends that “there is no reason that the children’s lives must he disrupted during the proceedings on remand.” Unlike the majority, I believe that not knowing where they may be living tomorrow (maybe with their father, maybe with their aunt and uncle, or maybe with new foster parents) very much constitutes a “disruption” in young children’s lives.

 Although the majority is critical of me for relying on this testimony, I think that it is a matter of common sense that it would take significant time for an imprisoned father, with respondent’s background, who has never had the sole responsibility of taking care of young children to demonstrate that he is capable of doing so.

 The majority, in my judgment, mischaracterizes the trial court’s ruling as an “uninformed presumption of [respondent’s] unfitness____” There had been at least nine proceedings preceding the termination of respondent’s parental rights. Respondent was represented by counsel, and the trial court inquired about respondent, at every single one of these proceedings. Therefore, if the trial court was “uninformed,” this is respondent’s own fault. Further, it does not appear that the trial court was “uninformed” about anything because respondent has certainly not done anything to more fully inform this Court concerning his ability to properly care for these children. Moreover, the trial court did not “presúmete]” that respondent was an unfit parent. To the contrary, the trial court reached this conclusion only after being involved with this case for more than 2V2 years, conducting nine proceedings, listening to the testimonies of the DHS and respondent, and reviewing and applying the pertinent laws.

 Although I agree with the majority that MCL 712A.19b(3)(h) does have a “forward-looking” component to it, if the majority interprets this to mean that courts must ignore the amount of time a respondent has already spent imprisoned, I disagree. Rather, MCL 712A.19b(3)(h) requires us to examine both a respondent’s past and future ability to provide proper care and custody of the children, including the amount of time he has already spent imprisoned and the amount of time he will spend imprisoned in the future.

 Respondent should he treated no differently from an incarcerated father who has no relatives who could provide his children with proper care. Once again, respondent himself did nothing at any juncture to ensure that proper care was provided to these children, despite the fact that he clearly could have.

 Even if the DHS had “facilitated respondent’s access to services,” as the majority contends the DHS should have done, it would still have taken respondent an uncertain amount of time after being paroled to demonstrate that he was capable of staying out of trouble outside of prison and capable of maintaining employment and suitable housing and caring for these children. Furthermore, MCL 712A.19a(6)(c) provides that if the state has not provided adequate services, “[t]he court is not required to order the agency to initiate proceedings to terminate parental rights ....” (Emphasis added.) Contrary to the majority’s contention, the language “not required to” is not synonymous with “shall not.” Indeed, given that a lack of adequate services does “not required” the court to terminate parental rights, a lack of adequate services also would not “not require” the court to maintain parental rights. The same is true of MCL 712A.19a(6)(a), which provides that the court is “not required to” order the agency to initiate termination proceedings if the children are being cared for by relatives. Finally, in response to the majority’s suggestion that respondent may never have received a copy of the parent-agency agreement, I must note that, at the termination hearing, respondent’s counsel asked respondent questions pertaining to his compliance with this agreement and respondent answered these questions. Neither respondent nor his counsel said anything that suggested that respondent had not received a copy of the agreement.

 There is no support in this dissent for the majority’s assertion that, because respondent was not an ideal parent, I believe he is “disentitle[d]” to “the rights afforded him as a parent in a proceeding involving his children’s welfare.” Respondent obviously was entitled to the rights afforded to him under the law, as would be any other person. The majority also asserts that I am improperly taking into consideration respondent’s imprisonment. Apart from the fact that the law itself takes into consideration whether “[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years,” MCL 712A.19b(3)(h), it is the majority who seems most preoccupied with respondent’s incarceration, by excusing and rationalizing conduct that would never be viewed as acceptable in the case of a parent who is not incarcerated. If respondent had not been imprisoned, his disregard for the welfare of his children, his lack of diligence in securing for them a stable home, his toleration of an unacceptable home environment, and his nearly total dereliction of ordinary parental duties would almost certainly be seen as contrary to the best interests of these children and sufficient to justify the trial court’s order terminating his parental rights. Although the majority is certainly correct that an imprisoned parent is entitled to equal rights under the law, he is not entitled to special, and more favorable, consideration on account of this status.